UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-23205-CIV-HIGHSMITH

JUAN AGUIRRE,

    Plaintiff,

v.

CITY OF MIAMI,

    Defendant.
_____/

### ORDER ON DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

THIS CAUSE is before the Court upon the Renewed Motion for Judgment as a Matter of Law with Memorandum of Law filed by Defendant City of Miami ("the City") [DE76]. This is an action to recover damages under the anti-retaliation provisions of the Americans with Disabilities Act (42 U.S.C. § 12203) and the Florida Civil Rights Act. This case proceeded to trial on July 23, 2007. At trial, the City moved for Judgment as a Matter of Law at the close of the Plaintiff's case, and again at the conclusion of trial. Both times, the Court reserved ruling, and, ultimately, presented the case to the jury.

The jury returned a verdict in favor of the Plaintiff on all counts. Specifically, the jury found that the adverse employment action taken by the City was causally related to the Plaintiff's statutorily-protected activity, and that the Plaintiff was constructively discharged

1

from his employment. The City now renews its Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b), arguing that the evidence presented at trial was insufficient to establish an element of the ADA and FCRA claims, and that the Plaintiff failed to set forth a claim for constructive discharge. For the reasons stated herein, the City's renewed Motion [DE 76] is DENIED, in part, and GRANTED, in part.

## Facts

The Plaintiff was employed by Defendant City of Miami (the "City") in the off-duty office of the police department. The off-duty office functioned to assign officers to work for private businesses throughout the City of Miami that requested security for their private events. The Plaintiff had worked in the off-duty office for approximately 18 years, and there has been no evidence alleging poor work performance.

On March 12, 2003, the Plaintiff testified in the trial of Rossbach v. City of Miami, Case no. 00-994-CIV-Martinez (the "Rossbach case"). He testified as to the City's policy towards disabled officers and the discriminatory conduct of the command level officers in his department. The Plaintiff's direct supervisor, Lieutenant Rene Landa, was present for the testimony. Lt. Landa admits that he was embarrassed by the Plaintiff's testimony and that he had been upset because he felt he had been mischaracterized. Lt. Landa denies, however, taking any steps in retaliation.

On the same day of the Plaintiff's testimony, Lt. Landa attended a meeting with

Captain Thomas Cannon (Lt. Landa's superior).  It is unclear whether Major Thomas Roell (Captain Cannon's superior) also attended this meeting. At the meeting they discussed both the growing complaints of officers who felt that the officers working in the off-duty office were monopolizing off-duty jobs, as well as the Plaintiff's testimony in the Rossbach case. At this meeting, Cpt. Cannon (and possibly Major Roell) gave a directive to Lt. Landa to change the office policy regarding off-duty jobs.

Later that evening, the Plaintiff returned to his office to find a memo from Lt. Landa on his desk.  The memo stated that the Plaintiff would no longer be able to work off-duty jobs without Lt. Landa's consent.  Prior to the memo, the Plaintiff had been allowed to unilaterally choose whatever off-duty jobs he wanted to work.  The following day, on March 13, 2003, believing that the March 12, 2003 memo regarding the change in policy was retaliatory, the Plaintiff forwarded the memo to the plaintiff's attorney in the Rossbach case, who in turn, presented the memo in the ongoing Rossbach trial.

In the days and weeks following the memo, the Plaintiff met with his chain of command, Major Roell and Cpt. Cannon, various times regarding the alleged situation with Lt. Landa.  The Plaintiff claims that this change in policy substantially affected his salary and was Lt. Landa's way of retaliating against him for testifying in the Rossbach case.  There was also testimony that Lt. Landa would pretend to lose the Plaintiff's off-duty job request forms resulting in a further reduction of off-duty assignments, and that on one occasion, Lt. Landa

tried to discredit the Plaintiff by not informing him when he had been approved for a job assignment.

The Plaintiff's and his fellow co-workers' testimonies reflect that during the period following the memo, the Plaintiff's supervisory duties were taken away, he was no longer able to attend meetings and he was basically confined to doing clerical work.  In April 2003, the Plaintiff was eventually told by his chain of command that he was being transferred to patrol duty.  The transfer, however, was later revoked.  Instead, a few months later, in or about September 2003, it was Lt. Landa that was transferred out of the off-duty office.

According to the trial testimony, after Lt. Landa's transfer out of the off-duty office, the policy in the March 12, 2003 memo was effectively revoked, and the Plaintiff was, once again, allowed to choose his own assignments, attend meetings, and was no longer confined to clerical work.  Over a year later, in September 2004, the Plaintiff retired from the City of Miami Police Department.  Shortly thereafter, in December 2004, he filed suit against the City for the aforementioned grievances.

## JNOV Standard

A renewed Motion for Judgment as a Matter of Law ("JNOV")[1] is to be considered after a verdict is rendered and where the moving party has previously moved for Judgment

---

[1] JNOV is a judgment notwithstanding the verdict, which is now known as a Renewed Motion for Judgment as a Matter of Law.  See Lee Memorial Health Systems v. Medical Savings Ins., Co., 2007 WL 2044232, 1 (M.D. Fla. 2007).

as a Matter of Law at the conclusion of the trial or at the close of the Plaintiff's case. Fed. R. Civ. P. 50(b). JNOV shall be entered when, "without weighing the credibility of witnesses, facts and inferences point so strongly and overwhelmingly in favor of one party that a reasonable jury could not arrive at a contrary verdict . . . ." Johns v. Jarrard, 927 F.2d 551, 557 (11th Cir. 1991). The court must resolve all factual disputes and draw all logical inferences in favor of the nonmoving party. Rankins v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998). If substantial conflicting evidence exists in record, so that reasonable people could differ, JNOV is improper. Johns, 927 F.2d at 557.

Substantial conflicting evidence is evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. Busby v. City of Orlando, 931 F.2d 764, 782 (11th Cir. 1991). Therefore, if there is substantial evidence opposed to the JNOV, the motions should be denied, and the case submitted to the jury. See Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1325 n. 5 (11th Cir. 1982) (citing Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969)). After all, it is not the court's but the jury's function, as traditional finder of fact, to weigh conflicting evidence and inferences, and determine the credibility of witnesses. Id.

Analysis

In its Motion for JNOV, the City contends that the Plaintiff failed to (1) establish the requisite causal connection between the protected activity and an adverse employment

5

action, and (2) establish a claim for constructive discharge. We address each argument in turn.

    (1) Causal Connection

In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that: there is a causal link between the protected activity in which he participated and his employer's adverse employment action. Bass v. Board of County Commissioners, 256 F.3d 1095, 1117 (11th Cir. 2001). To demonstrate a causal connection, the Plaintiff "need only 'show that the protected activity and the adverse action were not wholly unrelated.'" Clover v. Total System Services, Inc., 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985)). To show that the protected activity and the adverse action were not wholly unrelated, at a minimum, the Plaintiff must demonstrate that the employer "'was actually aware of the protected expression at the time it took adverse employment action.'" Id.

The employer's awareness of the protected expression can be established by circumstantial evidence. Id. (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)). Although close temporal proximity is generally sufficient to create a genuine issue of fact as to the causal connection, temporal proximity alone is insufficient where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct. Brungart v. Bellsouth Telecommunications, Inc., 231 F.3d

791, 799 (11th Cir. 2000).

The City believes that, in order to establish a causal connection, Plaintiff must prove that his entire chain of command, all the way up to Deputy Chief Frank Fernandez and Police Chief John Timmoney, were aware of Plaintiff's testimony in the Rossbach v. City of Miami case. (See Def.'s Renewed Mot. for J. as a Matter of Law With Mem. of Law 3 [hereinafter Def.'s Renewed Mot.].)[2] According to the City, it was established at trial that Deputy Chief Fernandez ordered Major Thomas Roell to give the directive changing the practices in the off-duty office to Captain Thomas Cannon and Lieutenant Rene Landa. (Id.) And, because the evidence that Deputy Chief Fernandez did not know about Plaintiff's testimony at the time he gave the order is unrebutted, then the close temporal proximity between Plaintiff's testimony and the adverse employment action does not suffice to create a genuine issue of material fact. (See Id. at 5-6.) Therefore, according to the City of Miami it is clear that judgment as a matter of law should be granted in their favor. (Id. at 2.)

However, a decision maker's disavowal of knowledge alone does not create unrebutted evidence where there is circumstantial evidence that may lead a reasonable person to infer that the decision maker's testimony is inaccurate. See Lippert v. Community Bank, Inc, 438 F.3d 1275, 1281-83 (11th Cir. 2006); see also Goldsmith v. City of Atmore, 996

---

[2] The City also argues that Plaintiff is trying to impute the alleged knowledge of Lt. Landa or Cpt. Cannon on Major Roell and Deputy Chief Fernandez, and this may not be done. Plaintiff, however, does not make this claim, so this court will not address it.

F.2d 1155, 1163-64 (11th Cir. 1993) (finding that although the decision maker denied knowledge of the protected activity, Plaintiff offered sufficient circumstantial evidence to rebut this claim). Here, there were sufficient inconsistencies and failed memories, so that a reasonable jury could differ as to who made the decision regarding the change in practice in the off-duty office.

For example, there was sufficient evidence to show that the decision to change the policy in the off-duty office was made in a meeting held on March 12, 2003, the day of Plaintiff's testimony. It was established that Lt. Landa discussed Plaintiff's testimony with those who were present at the meeting. Neither Lt. Landa, Cpt. Cannon nor Major Roell remember if Major Roelle was at that meeting. But, if he was, he would have known about Plaintiff's testimony prior to giving the directive.

Moreover, even though Deputy Chief Fernandez claims to have made the decision to change the manner in which jobs were distributed at the off-duty office, he was cross-examined with his deposition testimony in which he denied ever having heard any complaints about the off-duty office prior to March 12, 2003. It is not the court's function, to weigh conflicting evidence and inferences, and to determine credibility of witnesses. See Daniels, 692 F.2d at 1325 n. 5. Rather, where there is a question on which reasonable men could differ, directed verdict should not be granted, and the case is properly submitted to the jury. See Id.

Here, the evidence was not uncontroverted. Rather, there is sufficient evidence to impeach Deputy Chief Fernandez's claim of lack of knowledge, and, therefore, there is an issue of fact for the jury. Because there are several questions of fact on which reasonable men could differ regarding the causal connection between the City's adverse employment and Plaintiff's testimony, directed verdict on this issue should be DENIED.

(2) Constructive Discharge

With regard to the City's second argument, the City contends that Plaintiff has failed to present sufficient evidence to show that he was constructively discharged. The evidence shows that the Plaintiff stayed one year after Lt. Landa was removed from the off-duty office, and that Plaintiff's working conditions significantly improved within that year. Thus, the City claims that Plaintiff's working conditions were not so intolerable so that he was constructively discharged. (Def.'s Renewed Mot. 6.) Plaintiff claims that there was substantial evidence on this matter on which reasonable people could differ, and therefore, JNOV is improper. (Pl.'s Mem. of Law in Opp. to Def.'s Renewed Mot. for J. as a Matter of Law 6 [hereinafter Pl.'s Mem.].)

In order to show that he was constructively discharged, an "'employee must prove that his working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign.'" Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1526-27 (11th Cir. 1991) (citing Wardwell v. School Bd. of Palm Beach County, Florida, 786 F.2d 1554,

1557 (11th Cir. 1986)). An employee's working conditions, therefore, must significantly deteriorate in order for the court to consider an employer's actions to be a constructive discharge. Id.

Certain negative actions taken by an employer will not be considered a constructive discharge. See Wardwell, 786 F.2d at 1557. For example, an employer will not be found to have constructively discharged an employee where the employer increases an employee's workload, fails to promote the employee or fails to raise an employee's salary more than necessary while giving others significant raises. See Wardwell, 786 F.2d at 1557 (11th Cir. 1986) (increase in workload and no promotion); Durley v. APAC, Inc., 236 F.3d 651 (11th Cir. 2000) (failure to raise employee's salary); Beltrami v. Special Counsel, Inc., 170 Fed. Appx. 61, 62 (11th Cir. 2006) (given difficult jobs). For constructive discharge to exist, there must be more pronounced actions of disdain or disapproval by the employer towards an employee. See Hill, 934 F.2d at 1526-27; see Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997) (suggesting that being stripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers, might be conditions that a reasonable person would consider to be constructive discharge). For example, a demeaning demotion or transfer can be considered constructive discharge. Riley v. Birmingham Bd. of Educ., 154 Fed. Appx. 114, 117 (11th Cir. 2005) (quoting Stamey v. S. Bell Tel. & Tel. Co., 859 F.2d 855, 860 (11th Cir. 1988)).

The testimony of Plaintiff and his co-workers indicates that after Plaintiff's testimony in the Rossbach v. City of Miami case, he was significantly stripped of his managerial duties. Testimony also indicates that Plaintiff worked less off-duty jobs when Lt. Landa had to approve him for the work. Reasonable men could differ as to whether this change in Plaintiff's work environment can be considered a "demeaning demotion," and is so unpleasant that a reasonable person would have felt compelled to resign.

Plaintiff's and his co-worker's testimonies also indicate, however, that after Lt. Landa was transferred from the off-duty office, conditions drastically improved, and Plaintiff was practically restored to his former position. In fact, Plaintiff continued working as Sergeant in the Off-Duty Office for over a year after Lt. Landa's transfer. If an employer ceases to create an intolerable work environment, and the employee resigns irregardless of the improved conditions, this indicates that an employee has not been constructively discharged. Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1317 (11th Cir. 1989) (holding that the district court's finding that employees did not experience constructive discharge was not clearly erroneous where employer promptly responded to complaints, and the sexual harassment that the employees here complaining about stopped prior to their resignation one month later).[3]

---

[3]This case has been cited for the proposition that in order to be constructively discharged, an employee must resign within reasonable time of the employer's adverse actions. Smith v. Bath Iron Works Corp., 943 F.2d 164, 167 (1st Cir. 1991). Furthermore,

Plaintiff claims that he was never fully restored to his prior position because he was no longer the "face" of the off-duty office, as he was prior to his testimony in the Rossbach v. City of Miami case. However, after the City transferred Lt. Landa from the off-duty office, the policy requiring a lieutenant to approve all of Plaintiff's off-duty work assignments, which the Plaintiff claims constituted retaliation, was revoked. Plaintiff was allowed to attend meetings and meet with promoters, and his duties were no longer secretarial. Although the Plaintiff was not completely happy with his inability to reemerge as the "face" of the off-duty office, for constructive discharge to exist, there must be more pronounced actions of disdain or disapproval by the employer towards their employee. See Hill, 934 F.2d at 1526-27. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work

---

several other circuits have recognized the same rule of law. See Coffey v. Chattanooga-Hamilton County Hospital Auth., 194 F.3d 1311, 3 (6th Cir. 1999) (deciding that if an employee does not quit within a reasonable time of the employer's adverse actions, the delay rebuts any inference that the employee resigned because of the alleged harassment); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994) (finding that the fact that Plaintiff retired two-and-a-half months after the supervisor causing the adverse employment action was discharged, indicates that Plaintiff did not resign due to constructive discharge); see also Lawson v. Washington, 296 F.3d 799, 805 (9th Cir. 2002) (holding that constructive discharge only occurs when an employee quits); Moore v. KUKA Welding Systems & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999) (holding that for an employee to have been constructively discharged that employee must actually quit); Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996) (stating that for an employer's actions to constitute constructive discharge an employee must quit). But see Hunt v. City of Markham, Ill., 219 F.3d 649, 655 (7th Cir. 2000) (refusing to follow the proposition that suggests, without quite holding, that no claim of constructive discharge can be lodged if the employee did not actually quit).

and that all employees experience." Burlington Northern Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006)

While we are reticent to overturn the verdict of any jury, and recognize that the jury concluded that the City had effectively constructively discharged Plaintiff, we are compelled by overwhelming case law to conclude the contrary. Unfortunately, the fact that the jury found that the Plaintiff had been retaliated against by the City is, alone, insufficient to satisfy a claim for constructive discharge. While we do not necessarily agree with the notion that an aggrieved party must immediately quit his/her job in order to be constructively discharged, this is not for a District Court to decide. We are bound by the law that the Eleventh Circuit has dictated.

The Court finds it difficult to conclude that Plaintiff resigned within a reasonable time of the City's adverse actions, see supra fn. 3, while adhering to precedent. According to applicable case law, it seems clear that quitting one year beyond the occurrence of the City's adverse employment action or retaliatory conduct, while employment conditions have clearly improved, fails to fall within the reasonable time frame contemplated by the law in this circuit. See Steele, 867 F.2d at 1317(finding that there was no constructive discharge where the employees quit eleven days after the harassment stopped); see also Smith, 943 F.2d at 167(six months); Coffey, 194 F.3d at 3 (seven months); Steiner, 25 F.3d at 1465 (two-and-a-half months); see also Moore, 171 F.3d at 1080 (sustaining jury's finding that plaintiff was

constructively discharged where employee quit while harassment was still occurring).

Even if we were to follow the Seventh Circuit's more generous interpretation in Hunt,[4] the Plaintiff provided no reasons, i.e., vesting of a pension or retirement savings, financial hardship, inability to secure alternate employment, health condition necessitating continuation of health benefits, that would otherwise justify his delay in quitting his job, and that would explain why someone would otherwise endure, for one year, working conditions "so difficult or unpleasant that a reasonable person would have felt compelled to resign . . . ." Hill, 934 F.2d at 1526-27 (defining constructive discharge); see Hunt, 219 F.3d at 655.

Because the Plaintiff stayed for one year after Lt. Landa's transfer, the Plaintiff is now barred from recovering for a harm that, had he quit, could have been considered to exist. Plaintiff's claim of constructive discharge was, thereafter, diminished to the fact that he was no longer the "face" of the off-duty office, and the situation never returned to exactly the way it was before he testified at the Rossbach v. City of Miami case. Therefore, without weighing the credibility of witnesses, all facts and inferences point strongly and overwhelmingly to the conclusion that the City did not constructively discharge the Plaintiff after Lt. Landa was transferred from the off-duty office. Accordingly, we conclude that a reasonable jury could not arrive at a contrary verdict, and the court must grant JNOV on the

---

[4]See, e.g., Hunt, 219 F.3d at 1465 (noting that a person may, out of desperation or simple stubbornness, cling to his job despite provocations that would cause the average person to quit in disgust).

issue of constructive discharge.

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that the Defendant City of Miami's Renewed Motion for Judgment as a Matter of Law [DE 76] is DENIED, with respect to the issue of causal connection to the adverse employment action, and GRANTED, with respect to the constructive discharge claim.

DONE AND ORDERED in Chambers, at Miami, Florida this <u>12th</u> day of September, 2007.

_____
SHELBY HIGHSMITH
UNITED STATES DISTRICT JUDGE

cc:   Counsel of Record